**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey  07602-0800
201-489-3000
201-489-1536  Facsimile
Leo V. Leyva, Esq.
Jill B. Bienstock, Esq.
Attorneys for Defendant, Penson Financial Services, Inc.

| | | |
|---|---|---|
| EDWARD P. BOND, LIQUIDATING TRUSTEE, | : : : | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY |
| Plaintiff, | : : : | Civil Action No. 2:11-civ-07222 (DMC-JAD) Civil Action No. 2:11-civ-07223 (DMC-JAD) |
| v. | : : | CIVIL ACTION |
| PENSON FINANCIAL SERVICES, INC., | : : | |
| Defendant. | : | |

**PENSON FINANCIAL SERVICES, INC.'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO WITHDRAW THE REFERENCE**

Of Counsel and on the Brief:              Motion Date and Time: March 5, 2012

Leo V. Leyva
Mark G. Hanchet

On the Brief:

Jill B. Bienstock
Allison M. Stowell

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ........................................................................................ 1

ARGUMENT .................................................................................................................... 1

I.    *STERN*'S REASONING EXTENDS BEYOND STATE LAW COUNTERCLAIMS TO ALL PRIVATE RIGHTS NOT RESOLVED IN RULING ON A CREDITOR'S PROOF OF CLAIM ........................................................ 1

    A.    The Parties Agree that the Bankruptcy Court Cannot Finally Adjudicate the Common Law Claims ........................................................................ 3

    B.    The Bankruptcy Court Also Lacks Constitutional Authority to Finally Adjudicate the Preference and Fraudulent Transfer Claims ................................. 4

II.    THE THIRD CIRCUIT'S TEST FOR PERMISSIVE WITHDRAWAL REQUIRES WITHDRAWAL OF THE REFERENCE ....................................... 4

    A.    Withdrawal Will Foster the Economical Use of the Debtors' and Creditors' Resources ........................................................................ 5

    B.    Withdrawal Will Expedite the Bankruptcy Process ............................................. 5

    C.    Withdrawal of the Reference Will Promote Uniformity in Bankruptcy Administration ........................................................................ 6

    D.    Withdrawal Will Reduce Forum Shopping and Confusion. ................................ 8

III.    PENSON'S MOTION IS NOT PREMATURE ................................................................ 9

CONCLUSION……………………………………………………………………..........10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld, LLP (In re Coudert Bros. LLP)*,
  462 B.R. 457 (S.D.N.Y. 2011) ........................................................................................ passim

*Doctors Assocs., Inc. v. Desai*,
  No. 10-575, 2010 WL 3326726 (D.N.J. Aug. 23, 2010) ............................................................9

*Heller Ehrman LLP v. Arnold & Porter LLP (In re Heller Ehrman LLP)*,
  No. 11-04848, 2011 WL 6179149 (N.D. Cal. Dec. 13, 2011) ................................................3, 4

*In re Fairfield Sentry, Ltd.*,
  458 B.R. 665 (S.D.N.Y. 2011) ....................................................................................................2

*Kohn v. Haymount Ltd. P'ship, LP (In re Int'l Benefits Group, Inc.)*,
  No. 06-2363, 2006 WL 2417297 (D.N.J. Aug. 21, 2006) ..................................................6, 8, 9

*Langenkamp v. Culp*,
  498 U.S. 42 (1990) ......................................................................................................................4

*Michaelson v. Golden Gate Private Equity (In re Appleseed's Intermediate Holdings, LLC)*,
  No. 11-807, 2011 WL 6293251 (D. Del. Dec. 15, 2011) .............................................. passim

*Mishkin v. Ageloff*,
  220 B.R. 784 (Bankr. S.D.N.Y. 1998) ........................................................................................6

*Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*,
  665 F.3d 906 (7th Cir. 2011) ......................................................................................................2

*Paloian v. Am. Express Co. (In re Canopy Financial)*,
  No. 11 C 5360, 2011 WL 3911082 (N.D. Ill. Sept. 1, 2011) ......................................................3

*Samson v. Blixseth (In re Blixseth)*,
  Adv. No. 10-00088, 2011 WL 3274042 (Bankr. D. Mont. Aug. 1, 2011) ..................................3

*Stern v. Marshall*,
  131 S.Ct. 2594 (2011) ................................................................................................... passim

**STATUTES**

28 U.S.C. § 157 .................................................................................................................................9

Penson submits this reply memorandum of law in further support of its motion to withdraw the reference.[1]  For the reasons that follow, and for those stated in the Motion, the Court should withdraw the reference.

### SUMMARY OF ARGUMENT

Conceding that the Bankruptcy Court lacks constitutional authority to hear most of its claims, the Trustee requests in its Opposition that the Bankruptcy Court be permitted to issue proposed findings of fact and conclusions of law on those claims.  His reasoning is based solely on his assertion that the Bankruptcy Court has familiarity with the Adversary Proceedings and the underlying bankruptcy proceeding.  However, the Trustee's request would require adjudication in two different forums, a costly suggestion in both time and money for both the Parties and the Courts, and ignores the fact that there is no factual record in the Adversary Proceedings.  By contrast, withdrawal of the reference promotes uniformity of bankruptcy administration, reduces forum shopping and confusion, fosters the economical use of the Debtors' and creditors' resources, and expedites the bankruptcy process.  As a result, the reference should be withdrawn.

### ARGUMENT

**I.**   ***STERN*'S REASONING EXTENDS BEYOND STATE LAW COUNTERCLAIMS TO ALL PRIVATE RIGHTS NOT RESOLVED IN RULING ON A CREDITOR'S PROOF OF CLAIM.**

The Trustee asserts that *Stern v. Marshall* has no application in this case because it applies only to counterclaims, and there are no counterclaims at issue in this case.  Opposition at 2. The Trustee's narrow reading of *Stern* is simplistic and absurd; the Trustee completely ignores the import of the Supreme Court's reasoning.  Courts that have considered the impact of

---

[1]  The defined terms set forth in Penson's Memorandum of Law in Support of its Motion to Withdraw the Reference, dated November 23, 2011 (the "Motion"), are adopted here.  The Trustee's Memorandum of Law in Opposition to Defendant's Motion to Withdraw the Reference, dated February 3, 2012, is referred to as the "Opposition."

Case 2:11-cv-07222-DMC-JAD   Document 9   Filed 02/22/12   Page 5 of 13 PageID: 98

*Stern* are not so myopic.  For example, the Seventh Circuit determined that, "[a]lthough the Court noted that the question presented was 'narrow,'" under a "close reading" of *Stern*, bankruptcy courts lack constitutional authority to enter final judgment on private right claims "not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy."  *Ortiz v. Aurora Health Care, Inc. (In re Ortiz)*, 665 F.3d 906, 909, 911 (7th Cir. 2011) (quoting *Stern*, 131 S.Ct. 2594, 2611 (2011)).  As the Seventh Circuit explained, and courts have consistently concluded, it is *Stern*'s reasoning that requires the conclusion that bankruptcy courts' constitutional authority is affected more expansively than the holding would suggest.  *See, e.g.*, *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld, LLP (In re Coudert Bros. LLP)*, 462 B.R. 457, 464 (S.D.N.Y. 2011) (explaining in detail why, under *Stern* and other Supreme Court precedent, a bankruptcy court lacks constitutional authority to hear private right claims not necessarily resolved in ruling on a creditor's proof of claim and stating, "[i]n *Stern*, the Supreme Court held that the Bankruptcy Court's power to enter final judgments on matters is not co-extensive with what the statute considers 'core;' some matters considered core cannot be finally adjudicated in the Bankruptcy Court where they involve only private rights that will not necessarily be determined in ruling on a proof of claim filed against the estate, unless all the parties consent[]"); *In re Fairfield Sentry, Ltd.*, 458 B.R. 665 (S.D.N.Y. 2011) (describing *Stern* and Supreme Court precedent and stating, "[i]n short, if Congress creates an independent federal right, it may assign adjudication of that right to an Article I court.  Where the right exists in the common law, however, Congress may not constitutionally assign adjudication of that right to a non-Article III court because Congress has nothing to do with it[]" (internal quotation omitted)); *Ortiz*, 665 F.3d at 914 ("*Stern v. Marshall* makes plain that the bankruptcy judge in our cases exercised the judicial power of the United States in purporting to resolve and enter final

-2-

judgment on the debtors' Wisconsin state-law claims." (internal quotations omitted)); *Heller Ehrman LLP v. Arnold & Porter LLP (In re Heller Ehrman LLP)*, No. 11-04848, 2011 WL 6179149, at *5 (N.D. Cal. Dec. 13, 2011) ("By likening the claim in question explicitly to the fraudulent conveyance claims in *Granfinanciera*, this Court believes that *Stern* clearly implied that the bankruptcy court lacks constitutional authority to enter final judgment on the fraudulent conveyance claims presented here."); *Paloian v. Am. Express Co. (In re Canopy Fin.)*, No. 11 C 5360, 2011 WL 3911082 (N.D. Ill. Sept. 1, 2011) ("*Stern*'s breadth is made apparent by the Court's reliance in that case on an earlier decision."); *Samson v. Blixseth (In re Blixseth)*, Adv. No. 10-00088, 2011 WL 3274042 (Bankr. D. Mont. Aug. 1, 2011) ("Since Trustee's fraudulent conveyance claim is essentially a common law claim attempting to augment the estate, does not stem from the bankruptcy itself and would not be resolved in the claims allowance process, it is a private right that must be adjudicated by an Article III court.  This Court's jurisdiction over that claim as a core proceeding is therefore unconstitutional.").

Despite the Trustee's naive assertion to the effect that *Stern* applies "only to counterclaims," there can be no real dispute that under *Stern*, the Bankruptcy Court lacks constitutional authority to finally adjudicate claims which are private right claims, such as those asserted here by the Trustee, that are "not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy."  *Stern*, 131 S.Ct. at 2611.

      **A.**    **The Parties Agree that the Bankruptcy Court Cannot Finally Adjudicate the Common Law Claims.**

The Trustee concedes, as he must, that the Bankruptcy Court lacks constitutional authority to enter a final judgment on his common law claims, claims for an accounting, civil conspiracy, aiding and abetting civil conspiracy and fraud, and conversion.  *See* Opposition at

13. As a result, the Parties agree that these claims cannot be finally adjudicated by the Bankruptcy Court. *See id.* at 13-14.

### B. The Bankruptcy Court Also Lacks Constitutional Authority to Finally Adjudicate the Preference and Fraudulent Transfer Claims.

Moreover, the Trustee does not dispute that, under *Stern*, his preference and fraudulent transfer claims are matters of private right. In *Stern*, the Supreme Court explained that, where a "creditor has not filed a proof of claim, the trustee's preference action does *not* become[] part of the claims-allowance process subject to resolution by the bankruptcy court." *Stern*, 131 S.Ct. at 2617 (emphasis in original) (internal quotation omitted). Here, Penson has not filed a proof of claim. The Trustee's preference and fraudulent preference claims, as with all of his claims, will not be decided in a claims allowance process; rather, they seek only to augment the bankruptcy estate. As a result, the fraudulent transfer claims are a matter of private right.[2] Similarly, the preference claim (which is asserted in only one of the Adversary Proceedings)[3] cannot be finally adjudicated by a bankruptcy court.[4]

## II. THE THIRD CIRCUIT'S TEST FOR PERMISSIVE WITHDRAWAL REQUIRES WITHDRAWAL OF THE REFERENCE.

Given that the Bankruptcy Court lacks constitutional authority to finally adjudicate the Trustee's claims, the goals contained within the Third Circuit's test for permissive withdrawal are promoted by withdrawing the reference: withdrawal will promote uniformity in the

---

[2] *See Heller Ehrman*, 2011 WL 6179149 at *5 ("By likening the claim in question explicitly to the fraudulent conveyance claims in *Granfinanciera,* this Court believes that *Stern* clearly implied that the bankruptcy court lacks constitutional authority to enter final judgment on the fraudulent conveyance claims presented here.").

[3] The Trustee asserted his preference claim in Adversary Proceeding No. 11-01214. *See* Stowell Cert., Ex. 2 ¶¶ 22-29 (Docket No. 1-4).

[4] *See Langenkamp v. Culp*, 498 U.S. 42, 45 (1990) ("If a party does *not* submit a claim against the bankruptcy estate, however, the trustee can recover allegedly preferential transfers only by filing what amounts to a legal action to recover a monetary transfer. In those circumstances the preference defendant is entitled to a jury trial.").

bankruptcy administration, reduce forum shopping and confusion, foster economical use of the debtors' and creditors' resources, and expedite the bankruptcy process.[5]

### A.     Withdrawal Will Foster the Economical Use of the Debtors' and Creditors' Resources.

The Trustee contends that, because of uncertainties in how *other* adversary proceedings will proceed, withdrawal would not foster the economical use of the debtors' and creditors' resources.  This argument ignores the additional costs and delays that will ensue if Penson's Motion to Dismiss, and other dispositive motions, are adjudicated twice.  *See Michaelson v. Golden Gate Private Equity (In re Appleseed's Intermediate Holdings, LLC)*, No. 11-807, 2011 WL 6293251, at *3 (D. Del. Dec. 15, 2011) ("[T]he parties could potentially have to re-litigate the entire case.").  It also ignores the collateral litigation which will arise to determine whether the Bankruptcy Court has constitutional authority to enter final judgments on those motions.  *Id.*

The Trustee also contends that the Bankruptcy Court's specific knowledge concerning fraudulent transfer and preference actions weighs in favor of denying withdrawal.  The Trustee's fraudulent transfer claims are largely based on state law, *see* Stowell Cert., Ex. 2 ¶¶ 30-36, Ex. 3 ¶¶ 22-28 (Docket No. 1-4), and his argument ignores the fact that the large majority of his claims are common law claims outside of the Bankruptcy Court's expertise.  *See Dev. Specialists*, 462 B.R. at 473 ("Nor does the Bankruptcy Court have any special expertise in resolving the New York law claims at issue here.").

---

[5] Even if the Court were to rule that the Trustee's preference and fraudulent transfer claims should be deemed matters of public right, the factors still weigh in favor of withdrawal.  *See Michaelson*, *v. Golden Gate Private Equity (In re Appleseed's Intermediate Holdings, LLC)*, No. 11-807, 2011 WL 6293251, at *3 (D. Del. Dec. 15, 2011) (finding that, under *Stern*, both "core" and "non-core" claims should be withdrawn to promote the factors contained within the Third Circuit's test).

### B. Withdrawal Will Expedite the Bankruptcy Process.

Contrary to the Trustee's arguments, the issuance of proposed findings of fact and conclusions of law by the Bankruptcy Court, followed by *de novo* review by this Court will not expedite the bankruptcy process, nor promote the Third Circuit's other goals outlined above. The Trustee's suggestion that the Bankruptcy Court issue proposed findings of fact and conclusions of law will require the proceedings to be substantially repeated in two different courts. *See Dev. Specialists*, 462 B.R. at 472 ("It would be inefficient to allow these proceedings to go forward, knowing that they will have to be substantially repeated."). The delays and additional costs caused by this unnecessary repetition have been thoroughly evaluated and rejected by various courts. *See, e.g., Michaelson* 2011 WL 6293251, at *3 n. 7 ("[T]his would require two courts to become intimately familiar with the case."); *Kohn v. Haymount Ltd. P'ship, LP (In re Int'l Benefits Group, Inc.)*, 2006 WL 2417297, at *3 (D.N.J. Aug. 21, 2006) ("It would be a more efficient use of judicial resources for this Court to consider the matter and make a final decision rather than to maintain the reference to the bankruptcy court, only to bring the matter back to this Court for later reconsideration and a final decision."). The court in *Mishkin v. Ageloff* explained:

> [A]lthough it is difficult at this stage to predict the likelihood that these matters will proceed to trial, especially in light of the pending motions to dismiss, I have found that in complicated cases such as this, oversight of the pretrial proceedings provides me with insight into the precise nature of the claims and the theories upon which they are based. For these same reasons, I further decline to submit the motion to dismiss to the bankruptcy court for proposed findings of fact and conclusions of law. This would only generate another level of briefing and expense . . . .

220 B.R. 784, 801 n.13 (Bankr. S.D.N.Y. 1998). The Bankruptcy Court's familiarity with the bankruptcy proceeding, as asserted by the Trustee, cannot outweigh the delay caused by litigating in two different forums.

### C. Withdrawal of the Reference Will Promote Uniformity in Bankruptcy Administration.

The Trustee argues that, because Penson has filed a Motion to Dismiss in the Bankruptcy Court, the Bankruptcy Court is "quite familiar" with the underlying facts of the Adversary Proceedings. Opposition at 14. This argument has no merit. The only "facts" in the case are the allegations contained within the Trustee's Complaint. *See Dev. Specialists*, 462 B.R. at 472 ("[B]ecause only issues of law have been presented in this case so far, [the bankruptcy court's] familiarity with the underlying facts does not weigh in favor of retention of the case before him."). Moreover, the Bankruptcy Court has yet to hold a hearing of any kind in this adversary proceeding, let alone on Penson's Motion to Dismiss.

Next, the Trustee trumpets the Bankruptcy Court's supposed involvement in "similar issues in several other adversary proceedings[.]" Opposition at 14. But that claim, of dubious significance to begin with, no longer has any foundation. In fact, the Trustee has voluntarily dismissed six adversary proceedings which had asserted somewhat similar claims against other financial entities, and those voluntary dismissals all occurred *before* the Bankruptcy Court held any hearings, let alone adjudicated, the various defendants' motions to dismiss.[6]

The relevant issues in the remaining supposedly "similar" proceedings are not legally similar in any meaningful way. While the other adversary proceedings are predicated on McGrath's fraud, it is the Trustee's specific allegations against Penson (for example, that it aided and abetted McGrath) that are at issue in the Adversary Proceedings. The Trustee's allegations against each defendant are unique to each adversary proceeding and must be established in each separate proceeding. This Court, after reviewing the pleadings for this Motion, is no less familiar with the alleged "facts" of this case than is the Bankruptcy Court.

---

[6] Moreover, an Adversary Proceeding against MF Global has been stayed due to MF Global's filing for bankruptcy protection.

Meanwhile, withdrawal affirmatively acts to promote uniformity. With withdrawal, "all decisions would originate from one court[,]" eliminating two standards of review prior to trial:

> [i]f this Court did not withdraw the reference, different standards of review would apply to different claims, depending on whether the claim was core or non-core. This could result in the application of different facts to different claims in the same case. For example, if the Bankruptcy Court found a certain fact relevant in both a core and a non-core claim, but this Court found that fact to be erroneous, though not clearly erroneous, then this Court would be required to accept that fact for the core claim and reject that fact for the non-core claim. Uniformity in bankruptcy administration would not be promoted by such an irrational result.

*Michaelson*, 2011 WL 6293251, at *3 & n.7. Moreover, the Trustee's claims seek only to augment the bankruptcy estate, so withdrawal of the Adversary Proceedings will not affect the administration of the estate. *See Kohn*, 2006 WL 2417297, at *4.

### D. Withdrawal Will Reduce Forum Shopping and Confusion.

The Trustee accuses Penson of forum shopping because it "filed its motion after the Supreme Court decided *Stern*." Opposition at 14. This accusation is baffling. Penson affirmatively asserts that it is the recent decision in *Stern* that provides the grounds for Penson's Motion. *Stern* calls into question the Bankruptcy Court's constitutional authority to determine the Adversary Proceedings. Penson's Motion could not have been filed prior to *Stern*, and it in no way constitutes forum shopping. *See Kohn*, 2006 WL 2417297, at *4 ("Forum shopping exists where parties exert inordinate effort for the purpose of seeking not merely a fair trial but a forum they consider more receptive to their cause, and [it] requires courts to squander public resources in adjudicating the propriety of manipulative efforts to gain access to the forum considered most hospitable to the litigants' interests." (internal quotation omitted)). In fact, given *Stern*, withdrawal reduces the potential for forum shopping. *See Michaelson*, 2011 WL 6293251, at *3 ("To avoid confusion and future collateral acts on a judgment issued by the

Bankruptcy Court, the prudent action is to withdraw the reference at this juncture."). Withdrawal also reduces the potential for confusion: as explained above, withdrawal allows "all decisions to originate from one court," thereby eliminating the confusion which would arise from having decisions issued by multiple venues. *Id.* at *3 & n.7.

### III.     PENSON'S MOTION IS NOT PREMATURE.

Penson's Motion is not premature, as the Trustee argues. As Penson noted in its moving Brief, Brief at 4 n.3, the bankruptcy court need not first determine whether claims are core or non-core when the issue is not dispositive of the motion. *See, e.g.*, *Michaelson*, 2011 WL 6293251, at *2 n.5 (withdrawing the reference under *Stern* and stating that, because "an exact tallying of core/non-core claims is not essential to the analysis[,]" the court "will not require the [defendants] to first return to Bankruptcy Court for a core/non-core determination[]"); *Kohn*, 2006 WL 2417297 (withdrawing the reference after first determining the core/non-core status of the claims and then weighing the remaining factors of the Third Circuit's test); *Doctors Assocs., Inc. v. Desai*, No. 10-575, 2010 WL 3326726, at *5 (D.N.J. Aug. 23, 2010) (assuming claims are non-core for purposes of evaluating the remaining factors "[f]or the sake of judicial efficiency"). The issue is not dispositive here, as "the Bankruptcy Court's power to enter final judgments on matters is not co-extensive with what [Section 157(b)(2)] considers 'core.'" *Dev. Specialists*, 462 B.R. at 464.

## CONCLUSION

For the reasons herein and in Penson's Motion, Penson's motion for an order pursuant to 28 U.S.C. § 157(d) withdrawing the reference of the Adversary Proceedings should be granted.

Dated: February 22, 2012

By:   */s/ Leo V. Leyva*
COLE, SCHOTZ, MEISEL,
FORMAN & LEONARD, P.A.
Leo V. Leyva
Jill B. Bienstock
Court Plaza North
25 Main Street
Hackensack, NJ 07601
(201) 489-3000

- and -

MAYER BROWN LLP
Mark G. Hanchet
Allison M. Stowell
1675 Broadway
New York, NY  10019-5820
(212) 506-2500

*Attorneys for Penson Financial Services, Inc.*